IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

KEVIN MATTHEWS,            )
                           )
    Plaintiff,             )
                           )
v.                         )   Case No._____
                           )   **JURY DEMANDED**
TITLEMAX OF TENNESSEE, INC.)
                           )
    Defendant.             )

## COMPLAINT

Plaintiff Kevin Matthews sues Defendant TitleMax of Tennessee, Inc. as follows:

*Parties*

1. Plaintiff Kevin Matthews (hereinafter "Matthews") is a citizen and resident of Rutherford County, Tennessee.

2. Defendant TitleMax of Tennessee, Inc. (hereinafter "TitleMax") is a corporation authorized to conduct business in the State of Tennessee. TitleMax's principal place of business is 15 Bull Street, Ste. 200, Savannah, Georgia 31401. TitleMax's registered agent for service of process is the CT Corporation System located at 800 S. Gay Street, Suite 2021, Knoxville, Tennessee 37929-9710.

*Jurisdiction and Venue*

3. This cause of action alleges discrimination against Plaintiff based on his race, and retaliation against him for raising concerns about his mistreatment, in violation of Title VII of the Civil Rights Act of 1964. The Equal Employment Opportunity Commission ("EEOC") issued a right to sue letter to Plaintiff on August 14, 2014. Exhibit A. Therefore, jurisdiction over this action is

conferred upon this Court pursuant to federal statute codified at 42 U.S.C. § 2000e-5.

4. This cause of action also alleges a breach of contract and promissory estoppel under the common law and equity of the State of Tennessee. These pendent state law claims are so related to the claims over which this Court has original jurisdiction that they form the same case or controversy, so this Court has jurisdiction over the pendent state law claims pursuant to its supplemental jurisdiction codified at 28 U.S.C. § 1367.

5. Additionally, general jurisdiction is conferred upon this Court over the claims of this lawsuit under 28 U.S.C. §§ 1331 and 1343.

6. The discriminatory and retaliatory acts and practices and breach of contract complained of herein took place within this district. Accordingly, this Court is the proper venue for this action pursuant to 28 U.S.C. § 1391.

*Facts*

7. At all times relevant herein, Matthews was an employee of TitleMax as such term is defined at 42 U.S.C. § 2000e(f).

8. At all times relevant herein, TitleMax was an employer as such term is defined at 42 U.S.C. § 2000e(b). TitleMax employed more than 500 employees at all times relevant hereto. TitleMax engaged in commerce as such term is defined at 42 U.S.C. §2000e(g) at all times relevant hereto.

9. TitleMax hired Matthews on April 9, 2012 as a general manager.

10. Matthews out-performed similarly situated employees in his district as General Manager.

11. Matthews was initially hired to work in the Murfreesboro, Tennessee area, where he performed well and was eligible for bonuses and other benefits based on his performance.

12. From the time of his hire, Matthews was subjected to racial slurs and commentary made by his District Manager, Theresa Doran ("Doran"). Initially, these comments were few and far between, but they became more frequent and intense during his employment. These racial comments were often made to Matthews about other black employees, but Doran's hostility increased and her racial slurs included direct attacks on Matthews' intelligence and skills based on his race by the end of his employment.

13. After Matthews had demonstrated skill and had achieved success at one TitleMax location, the District Manager, Doran, asked Matthews to accept a post managing a TitleMax location in Winchseter, Tennessee.

14. The Winchester location was not a favorable location to manage. Its revenues were consistently lower than the location Matthews managed before Doran requested that he transfer.

15. Doran told Matthews that another employee who was white had refused the transfer to Winchester.

16. Doran also told Matthews that he would need to be careful in Winchester, as Doran felt customers of TitleMax in Winchester would not be favorably disposed toward a black manager. Doran also indicated that TitleMax prefers to keep its black managers in black neighborhoods, but as no white manager

was willing to take the Winchester store, she had no choice but to transfer Matthews.

17. Doran reassured Matthews that he should accept the transfer to Winchester because: (1) she promised him a transfer back to Murfreesboro within six (6) months and (2) as a black man he would be comfortable at the Winchester location because it was located near a bar-b-que restaurant.

18. Matthews accepted the post in Winchester based on Doran's assurances, and his ambition to excel and turn the store around.

19. Matthews succeeded at making the Winchester location successful. The revenue and collection numbers improved dramatically under his leadership.

20. In spite of Matthews' success, Doran became more and more agitated toward him as time went on. She attributed the success of the Winchester location to a white employee, and blamed any negative events at the Winchester location on Matthews.

21. On at least one occasion, an angry customer requested a payment extension, and repeatedly called Matthews a "n****r" who "did not know what he was doing". Doran agreed with the customer in Matthews' presence.

22. After several months at the Winchester location, Matthews followed up with Doran on the transfer she had promised him back to Murfreesboro within six months of his transfer to Winchester. Doran became angry, and assaulted Matthews with racial slurs and commentary.

23. Eventually, seeing no relief from Doran's behavior, Matthews disclosed he false promises and repeated racial hostility to Shawn Roberson ("Roberson"),

Ms. Doran's superior and Regional Manager for TitleMax. Mr. Roberson declined to discuss any problems related to race, and instructed Matthews to "be a team player."

24. Mr. Roberson indicated that he did not believe that Doran would do such things. At one point when Matthews attempted to discuss his concerns about the racial hostility and disparate treatment, Roberson simply hung up the phone.

25. After Matthews began to complain about unkept promises and racial discrimination, Doran issued written counseling for an alleged policy violation that was extremely petty, and for behavior for which he had received direct instructions from Doran to perform.

26. Finally, on or about August 1, 2013, Doran terminated Matthews' employment. The reason for his termination was a policy violation that was completely fabricated.

*Count I: Race Discrimination—Disparate Treatment*

27. Matthews is a member of a protected class because he is black.
28. Matthews was qualified for his position and performed well in the position.
29. TitleMax suffered adverse employment actions by (1) being transferred to a less favorable location after similarly situated white employees refused the transfer; and (2) being terminated from his employment.
30. Matthews' race was a determinative factor in the adverse employment actions taken against him.

31. Circumstances that demonstrate the racial basis for Matthews' termination include, but are not limited to: (a) Doran's, his direct superior's, repeated use of racial commentary and slurs in his presence and out; (b) upon information and belief, Doran's history of verbal abuse and hostility toward black employees and people in general; (3) Robison's refusal to address Matthews' concerns about racial hostility and disparate treatment in any way whatsoever; (4) the temporal proximity between Matthews complaints of disparate treatment and hostility based on race and Matthews' written counseling and subsequent termination; and (5) the more favorable treatment white employees in general and similarly situated white general managers in particular received compared to Matthews.

32. TitleMax's adverse employment actions against Matthews because of his race violated Title VII, and Matthews should be compensated for his damages as a result.

33. Matthews has suffered harm as a result of TitleMax's actions including but not limited to loss of income, loss of benefits, loss of reputation and prestige, mental anguish, emotional distress and embarrassment.

*Count II: Race Discrimination--Harassment*

34. Matthews was subjected to ongoing unwelcome conduct based on his race and color.

35. Specifically, Doran made racial slurs and comments about Matthews and other black employees to and around Matthews on a repeated basis. Doran

further treated Matthews and other black employees less favorably than white employees. Doran condoned and agreed with the racial comments of others.

36. Whenever Matthews would complain about Doran's racist comments, Doran would threaten to have Matthews terminated, such that enduring the unwelcome conduct became a condition of his employment.

37. Doran's conduct was so severe and/or pervasive that a reasonable person in Matthews' position would have considered his work environment intimidating, hostile and abusive. Matthews, in fact, found his work environment to be intimidating, hostile and abusive.

38. Matthews informed his superiors of Doran's harassment, but TitleMax failed to take any action whatsoever to correct or end the harassment.

39. Instead, TitleMax allowed Matthews supervisor, the perpetrator of the harassment, to terminate him.

40. Matthews has suffered harm as a result of TitleMax's and Doran's harassment including but not limited to loss of income, loss of benefits, loss of reputation and prestige, mental anguish, emotional distress and embarrassment.

*Count III: Gender Discrimination*

41. Matthews is a male.

42. Matthews was qualified for the position of General Manager for TitleMax.

43. Matthews was terminated from the position of General Manager.

44. Female employees who performed poorly were retained in the position of General Manager, and received generally more favorable treatment, than Matthews because Matthews was a man.

45. Matthews has suffered irreparable harm as a result of TitleMax's actions including but not limited to loss of income, loss of benefits, loss of reputation and prestige, mental anguish, emotional distress and embarrassment.

*Count IV: Retaliation*

46. Matthews engaged in protected activity when he opposed Doran's illegal activities by informing her supervisor that Doran was using racial slurs and commentary and otherwise harassing him and others based race.

47. TitleMax knew that Matthews engaged in a protected activity because he communicated his concerns directly to the Regional Manager.

48. Matthews' protected activities did not disrupt TitleMax's ongoing business.

49. TitleMax subjected Matthews to adverse employment circumstances first by transferring him to an unfavorable location, then forcing him to undergo "written counseling" by his harasser, then terminating his employment.

50. Matthews has suffered irreparable harm as a result of TitleMax's actions including but not limited to loss of income, loss of benefits, loss of reputation and prestige, mental anguish, emotional distress and embarrassment.

*Count V: Breach of Contract*

51. Among other assurances, TitleMax offered Matthews a guaranteed transfer back to a Murfreesboro area location within six months and continued employment if he accepted the transfer to the Winchester location.

52. Matthews accepted TitleMax's offer of a transfer and continued employment.

53. Matthews' acceptance of the transfer to the Winchester location and TitleMax's assurance of a transfer back to Murfreesboro and continued employment, among other assurances, provided sufficient consideration for a contract.

54. TitleMax and Matthews formed a contract because they made mutual promises and assurances based on an offer and acceptance with sufficient consideration.

55. TitleMax breached its contract with Matthews by failing to transfer him back to a Murfreesboro location within six months of his transfer to the Winchester location, and by failing to continue his employment.

56. Matthews has been damaged by TitleMax's breach of its contract with him because he has lost compensation contemplated by their agreement and has suffered ancillary and consequential damages, for all of which TitleMax should be required to compensate Matthews.

*Count VI: Promissory Estoppel*

57. Among other promises, TitleMax promised Matthews to transfer him back to a Murfreesboro area location within six months and to continue his employment if he accepted the transfer to the Winchester location.

58. Matthews reasonably relied upon TitleMax's promises when he accepted the transfer to Winchester.

59. Matthews' suffered harm and detriment as a result of his reasonable reliance on TitleMax's promises because TitleMax subjected him to open and latent

racism, failed to provide full compensation for his work, and ultimately deprived him of his promised compensation altogether because TitleMax broke its promise and failed to transfer him back to Murfreesboro or continue his employment, for all of which equity requires TitleMax to compensate Matthews.

WHEREFORE, Matthews seeks the following relief:

1. That process issue and be served in accordance with the Federal Rules of Civil Procedure;

2. For an award of front pay, back pay, statutory damages, compensatory damages, attorney fees and all other relief to which he may be entitled;

3. That TitleMax be charged with the costs of this cause;

4. For general relief.

Respectfully submitted,

Mark J. Downton, #20053
Attorney for Plaintiff
9005 Overlook Blvd.
Brentwood, Tennessee 37027
(615) 236-1440

EEOC Form 161 (11/09)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: Kevin V. Matthews<br>4858 Octavia Street<br>Murfreesboro, TN 37129 | From: Nashville Area Office<br>220 Athens Way<br>Suite 350<br>Nashville, TN 37228 |

[ ]   *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 494-2013-01830 | Sylvia D. Hall,<br>Supervisory Investigator | (615) 736-5855 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*/s/ Sylvia D. Hall*

Sarah L. Smith,
Area Office Director

AUG 1 4 2014

*(Date Mailed)*

Enclosures(s)

cc:   Travis L. Smuckler
Employment Counsel
TITLE MAX CORPORATE OFFICE
15 Bull Street
Savannah, GA 31401